IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FACEBOOK, INC., | ) | |
| Plaintiff, | ) | Case No. 11 CV 03052 |
| | ) | |
| vs. | ) | The Honorable Judge Marvin Aspen |
| | ) | |
| TEACHBOOK.COM, LLC, | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TEACHBOOK.COM'S RULE 12(B)(6) MOTION TO DISMISS FACEBOOK'S COMPLAINT**

Defendant Teachbook.com, LLC (hereinafter "Teachbook") hereby presents its Memorandum of Law in Support of its Motion to Dismiss the Complaint of Facebook, Inc. (hereinafter " Facebook").

**INTRODUCTION**

The inescapable fact at the core of Facebook's Complaint is that the two marks, *on their face*, bear no distinctive resemblance to one another, whatsoever:

 

This Court cannot accept as true Facebook's conclusory allegation that these two marks are "substantially similar" since the allegation is belied by a mere glance at the marks themselves. Facebook's other conclusory allegation that the two marks are "highly similar… in appearance, sound, meaning and commercial impression" is pure folly. Since the marks bear no distinctive resemblance in sight, sound or commercial impression, there is no likelihood of confusion.

Half way through the Complaint, Facebook makes its sole *factual* allegation of similarity, that Teachbook, like thousands of other companies before it, had the audacity to use the generic

1

word "BOOK" in its name. Facebook's bare allegation that Teachbook's use of the word "BOOK" usurps a "distinctive part of the FACEBOOK Marks" is contradicted, not only by the stark dissimilarity of the whole marks, but by voluminous and indisputable records of the USPTO showing more than 100 BOOK-formative marks have registered for relevant goods and services, without any Examining Attorney citations to Facebook's mark, nor any objection from Facebook.

Moreover, Facebook's Complaint is directly contradicted by the admissions it made just two months after originally filing suit against Teachbook in California. Facebook defended itself in a challenge by "Factbook" by arguing that the marks "Facebook" and "Factbook" look and sound so different that "likelihood of confusion … can be clearly excluded." Hence, Facebook cannot in good faith maintain this action when it has argued that a more similar looking and sounding mark could never be confused with Facebook. The admission, coupled with the indisputable facts discussed herein, undercuts all of Facebook's purported causes of action. Where there is no similarity, there can be no likelihood of confusion and the Complaint should be dismissed.

## STATEMENT OF FACTS

**A. Teachbook's and Facebook's Services and Consumers Are Not Similar**.

Teachbook is a small Illinois company, which seeks to operate a "professional community for teachers." (Complaint, ¶2, Ex. C.) Teachbook is "a secure, professional online environment. You can create, share and search a database of lesson plans and instructional videos created by other teachers, as well as find online courses, instructional modules, and other education resources." Teachbook also intends to enable teachers "to manage their student grades

by recording, calculating, and sharing them in a secure online Gradebook." (*Id*, Ex. C.)[1]

Facebook claims it "has permeated the web and Facebook users are accustomed to seeing and expect to see Facebook across the world wide web, not just on the Facebook site." (Complaint, ¶ 11.) On its site, Facebook explains that it is "a **social utility** that helps people communicate more efficiently with their friends, family and coworkers. The company develops technologies that facilitate the sharing of information through the social graph, the digital mapping of people's real-world social connections. Anyone can sign up for Facebook." (Rodenbaugh Decl., Ex. A (emphasis in original).)

### B. Facebook's and Teachbook's Marks Are Not Similar.

The core allegation of each of Facebook's claims is that these marks are "substantially" or "highly" similar:

 

(See, e.g., Complaint, ¶¶ 12, 15, 25, 38, and Ex. B and C.) Facebook's two-color mark is a plain, clean, and simple typeface, sans serif, printed in all lower case white letters on a bright blue background. On the other hand, Teachbook's five-color mark is a messy, freehand spelling in all upper case white letters, against a black, white and brown chalkboard background, and includes a distinctive font with a highlighted and stylized yellow "T" with bright stars, a swath of green, and the addition of "A Professional Community for Teachers" tagline.

### C. Facebook Has Admitted That FACTBOOK is Not Similar to FACEBOOK.

In October 2010, in response to a trademark challenge by the owners of *Factbook* before the European trademark office, Facebook argued:

---

[1] Facebook has not objected to Teachbook's intent to use Gradebook as the name for this service.

> [T]he differences existing between the first parts of the confronted marks FACE- and FACT- respectively are sufficient to dispel any possible similarity between the marks and to determine their overall dissimilarity. … [¶] The conceptual or aural differences between the marks will immediately draw the consumers' attention, so they can be confirmed as overall different. [¶] In the light of the above, since the marks are different, likelihood of confusion … can be clearly excluded.

(Rodenbaugh Decl., Ex. B.)

### D. **USPTO Records Reveal More Than 100 "-BOOK" Formative Marks.**

Facebook alleges first use of its mark in January, 2004. (Complaint, ¶ 6.) Prior to that, there were about 50 formative-BOOK marks registered with the USPTO for relevant goods and/or services. (Rodenbaugh Dec., ¶ 6, Ex. C-D.) Prior to Facebook's first trademark application in February, 2006, some ten more such marks registered with the USPTO. (*Id.*, ¶7.) In March, 2009, when Teachbook filed its trademark application, there were some 90 such marks. (*Id.*, ¶8.)

Since then, more than 50 other BOOK-formative marks have registered at the USPTO or been approved by its many various Examining Attorneys (and thus are registered or allowed for registration) for relevant goods and services. (*Id.*, Ex. C-D.) In all, well more than 100 different marks have been used and registered in relation to relevant goods and services, without any apparent objection from Facebook. Some 70 of them claim a date of first use prior to Facebook's. (*Id.*.)

### E. **Other Facts Demonstrate That "BOOK" is Not Distinctive**.

Facebook has never claimed distinctive rights to the word BOOK by filing a U.S. trademark application or using such mark in commerce.[2] The word BOOK has <u>never</u> been

---

[2] However, Teachbook notes that Facebook has claimed exclusive rights in the word FACE in the United States. (Rodenbaugh Decl., Ex. F.) Facebook also claimed "intent-to-use" rights in FBOOK for more than three years, but never proved use of such mark, and so those USPTO applications were abandoned. (*Id.*, ¶11, Ex. G.)

4

registered as a trademark on the Principal Register of the USPTO, and thus has never been registered as distinctive of <u>any</u> good or service of <u>any</u> company, ever. (Id., ¶9, Ex. E.) Also, Dictionary.com, for example, defines a "facebook" as "a publication for an organization, such as a school or business, which helps members identify each other; also, an online version of this," and indicates it has been used in such a manner since at least 1983. (*Id.*, ¶13, Ex. H.)

Further, there are popular groups on Facebook which use other BOOK-formative marks for their networking and other services, including Faithbook, Lamebook, Dogbook, Catbook, and even Teachbook (unrelated to Defendant Teachbook). (*Id.*, ¶14, Ex. I.)

## **LEGAL STANDARD**

This Court may grant Teachbook's Motion to Dismiss pursuant to Rule 12(b)(6) since "it appears beyond doubt that [Plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Colfax Corp. v. Illinois State Toll Highway Auth.,* 79 F.3d 631, 632 (7th Cir. 1996) (citation omitted). "[Although i]n ruling on motions to dismiss, courts must presume that all facts fairly alleged in the complaint are true[,] … courts are not obliged, however, to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Gray v. Dane County*, 854 F.2d 179, 182 (7th Cir. 1988) (citations omitted). Similarly, the court is not obliged to accept as true unsupported conclusions of fact. *E.g., McLeod v. Arrow Marine Transport, Inc.,* 258 F.3d 608, 614 (7th Cir. 2001); *Hickey v. O'Bannon*, 287 F.3d 656, 657-58 (7th Cir. 2002).

The court may take judicial notice of matters of public record, without converting the motion to one for summary judgment. *E.g.,* Federal Rule of Evidence 201; *Gen. Elec Cap. Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir. 1997); *Thomas & Betts Corp. v. Panduit Corp.,* 65 F.3d 654, 664 n. 12 (7th Cir.1995) (taking judicial notice of patent in a trade

5

dress infringement case); *Henson v. CSC Credit Svcs.*, 29 F.3d 280, 284, (7th Cir. 1994) (collecting authorities and finding district court properly considered public court documents). The court also may consider the exhibits attached to Plaintiff's complaint. *E.g.* Fed.R.Civ.P. 10(c). In addition, the Court may review and consider copies of the parties' websites, since they are specifically referenced in the Complaint and crucial to Facebook's claims. *E.g., Le Book Publishing, Inc. v. Black Book Photography, Inc.*, 418 F. Supp.2d. 305, 308 (S.D.N.Y. 2005); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993). Finally, the Court may consider dictionary definitions of the word FACEBOOK and BOOK. *Miller Brewing Co. v. G. Heileman Brewing Co., Inc.,* 561 F.2d 75, 80 (relying on dictionary definition of "light" to conclude that "light" is a generic term when used with "beer.").

## ARGUMENT

A mere glance at the two marks is all that is needed to decide this Motion. Further, the voluminous public record, coupled with indisputable evidence provided with Facebook's Complaint and on its website proves that Facebook cannot allege facts sufficient to maintain any of its claims. All of Facebook's claims demand that there is a confusing similarity of some distinctive feature of the parties' marks. However, there is none. And, since Facebook already has admitted that the word BOOK is generic, Facebook has no cognizable cause of action.

**I.    FACEBOOK'S COMPLAINT SHOULD BE DISMISSED SINCE IT CANNOT ALLEGE ACTUAL CONFUSION OR THE LIKELIHOOD OF CONFUSION.**

Facebook's complete failure to allege any facts or specific characteristics of the competing marks which could possibly lead to confusion amongst consumers necessitates dismissal of the Complaint. To prevail on a Lanham Act claim, a plaintiff must establish that (1) its mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers. *E.g.*, *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001).

6

Since Facebook cannot even allege likelihood of confusion or dilution, Counts 1, 2 and 3 under the Lanham Act must be dismissed. Similarly, each of Facebook's other causes of action are necessarily premised on the conclusory, patently false notion that Teachbook's mark "is substantially similar." (Complaint, ¶ 15, incorporated into Counts 4-8.) In light of voluminous public record evidence to the contrary, including Facebook's own argument to OHIM, this Court must dismiss the Complaint.

**A. Facebook's Allegation of Similarity Is Belied by the Marks Themselves.**

Viewing the contested marks side by side, or hearing them one after the other, this Court can quickly reach the inescapable conclusion that the two marks are sufficiently different. While generally likelihood of confusion is determined as a matter of fact, "to the extent the determination is predicated on the similarity of the marks themselves," the issue can be adjudicated as a matter of law. *E.g., Le Book Pub.*, *Inc*., 418 F.Supp.2d at 311-312 (granting defendant's motion to dismiss based on the dissimilarity of the parties' LE BOOK and BLACK BOOK marks); *Top Tobacco, L.P. v. North Atlantic Op. Co*., 509 F.3d 380, 380-83 (7th Cir. 2007) ("This case illustrates the power of pictures. One glance is enough to decide the appeal."); *Henri's Food Prods. Co., Inc. v. Kraft, Inc.,* 717 F.2d 352, 354 (7th Cir. 1983) ("this Court is in as good a position as the trial judge to determine likelihood of confusion"). The court must consider the actual presentation of the marks to the consuming public. *E.g., Top Tobacco, L.P. v. North Atlantic Op. Co*., 2007 WL 118527 ,*3-4 (N.D. Ill. 2007) ("The Seventh Circuit made clear in *Barbecue Marx* that the visual appearance of the marks is crucial to determining whether the marks are confusingly similar."), *aff'd*, 509 F.3d 380 (7th Cir. 2007); *Barbecue Marx, Inc., v. 551 Ogden, Inc.*, 235 F.3d 1041,1044 (7th Cir. 2000) ("Because the public will encounter the marks in written as well as spoken form, we believe it is essential to consider the

7

marks' visual characteristics.").

One glance at the Facebook and Teachbook marks clearly illustrates the paucity of Facebook's attempt to claim they are similar. It is undeniable that the two marks are completely different, not only in the first dominant word, but also in typeface, style, coloration and overall commercial impression. Facebook's neat, clean and linear mark has its name in white lower case letters on a blue background. In stark contrast, Teachbook's mark is multi-colored, frenetic and messy, and has its name spelled on a dirty blackboard with all upper case letters in distinctive chalk handwriting. Teachbook.com's mark also distinguishes its first letter with its own color, and graphics of bright stars which appear to be emanating from the "T" – with bright stars in the background. Finally, there is a swath of green, and the inclusion of the tagline - "A Professional Community for Teachers." Other than the suffix word 'book', there is not a single element of Teachbook's mark which is present in any iteration of Facebook's marks.

In *Top Tobacco*, the Seventh Circuit began its brief opinion: "This case illustrates the power of pictures. One glance is enough to decide the appeal." 509 F.3d at 380. The same is equally true here. One glance is enough to determine that Facebook's Complaint is frivolous, lacking facts as well as any good faith basis on which to claim confusing similarity between the parties' marks.

**B. Facebook Cannot Allege Trademark Claims Based on the Mere Fact that Both Marks Include the Word "Book."**

Facebook cannot maintain any trademark claim, because the only common feature of both marks is the indistinct, generic word BOOK. To be sure, in a case directly on point, the same argument made by Facebook already has been rejected by the Southern District of New York. *Le Book Pub., Inc.,* 418 F. Supp.2d. at 311-12. In *Le Book*, the Court was confronted with a trademark claim that the parties' LE BOOK and BLACK BOOK marks were confusingly

8

similar. *Id.* The Court dismissed the lawsuit, holding "The only word in common in the marks is 'Book' which is an unregisterable component of the mark. The word 'book' is a generic term and cannot be registered as a trademark." *Id.* Thus, this Court need look no further.

In similar cases, the Seventh Circuit has likewise rejected likelihood of confusion claims that are based on marks with a common suffix and differing prefixes. The Seventh Circuit has repeatedly held that, "if one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements." *Henri's Food Prods. Co., Inc.,* 717 F.2d at 356 (affirming no likelihood of confusion between YOGOWHIP and MIRACLE WHIP mark for salad dressings). As explained in *Henri's Food*, "When one portion of a composite mark is a descriptive or generic word, that feature of the mark may be of less significance in designating a source of origin….A finding of secondary meaning in the word WHIP would have no impact on our comparison of the marks." *Id.* (citing cases).

In this case, it is obvious that the first syllables in the TEACHBOOK and FACEBOOK marks are predominant, that the second syllable 'book' is the only common feature in any iteration of the marks, and that word is generic or at least indistinctive as to Facebook. Therefore, as a matter of law, there can be no confusing similarity between these marks. Indeed Facebook recently argued as much in another case.

**C. Facebook Has Judicially Admitted Facts Which Undercut Its Entire Complaint.**

Facebook cannot allege that the mere presence of the word "book" in TEACHBOOK causes any likelihood of confusion because it already has judicially admitted to the European trademark office that the opposite is true. According to Facebook's legal submission, "[T]he signs FACTBOOK and FACEBOOK bear no visual, phonetic or conceptual similarity." (Rodenbaugh Decl., Ex. B). Further, the FACTBOOK and FACEBOOK marks "*will be*

9

*understood by the average consumer as completely different terms*":

> **The aural and conceptual differences between the marks counteract any existing similarity that in any case, would only be very low. Their pronunciation will be strikingly different, leaving no chance of confusion. Moreover, the relevant public will immediately grasp the meaning of the beginnings of the marks and recognize their overall conceptual difference.** … [¶] A global assessment of the likelihood of confusion must be based on the overall impression created by the marks, bearing in mind, in particular, their distinctive and dominant components (which, as stated above would in this case be their initial part). **In the light of the above, since the marks are different, likelihood of confusion … can be clearly excluded.**

(*Id.* (emphasis supplied).)

Facebook cannot now allege that "Teachbook" is similar to Facebook when it recently and unequivocally argued to the European trademark office that the words FACTBOOK and FACEBOOK are so dissimilar there could be no possibility of consumer confusion whatsoever. As recently explained by Judge Der-Yeghiayan, "Top Tobacco cannot have it both ways…. It cannot argue to the USPTO that marks that include the word "top" for tobacco products are weak because the term is "common" and then argue before this Court that its TOP mark is strong." *Top Tobacco*, 2007 WL 118527 at *4-5, <u>aff'd</u>, 509 F.3d 380; *Toyota Motor Sales, U.S.A., Inc. v. Profile Cocktail Lounge, Inc.*, 2001 WL 123787, *3 (N.D. Ill. 2001) (rejecting Toyota's trademark argument because it had previously argued to the contrary -- "If "Lexis" is distinguishable from "Lexus," then surely "Lexxns" is much more so").

Here, Facebook cannot have it both ways. It cannot now deny that the words TEACH and FACE are far more dissimilar "visually, phonetically, and conceptually," than the words FACT and FACE. Similarly, Facebook cannot deny that the marks' "pronunciation will be strikingly different, leaving no chance of confusion." Similarly, Facebook cannot deny that "the relevant public" – in this case highly educated teachers and administrators who would use Teachbook – would "immediately grasp" the dramatically different "meaning of the beginnings

10

of the marks" since the differences between TEACH and FACE are far more pronounced than the terms FACT and FACE.

Finally, and perhaps most importantly, Facebook cannot in good faith claim that it has any superior right to use the word "book". As Facebook itself has clearly articulated, "[T]he earlier marks… do not give the Opponent any kind of monopoly right over its descriptive and non-distinctive use of the term BOOK, *per se.*" (Rodenbaugh Decl., Ex. B) (emphasis supplied) Given these striking admissions, Facebook cannot now allege, with a straight face, that the common element "book" will create the likelihood of confusion or dilution. Of course, this Court should not accept Facebook's conclusory allegations as true, when Facebook itself has admitted otherwise.

### D. Facebook Cannot Rely Upon A Generic Or Descriptive Term To Plead <u>Any</u> Trademark Claim.

Facebook is simply unable to allege that the lone similar element in the parties' marks – the word BOOK -- is sufficiently distinctive to warrant trademark protection. The Seventh Circuit repeatedly has held that "a court doesn't even reach the question of likelihood of confusion until persuaded that the putative mark is sufficiently distinctive to warrant prima facie protection as a trademark." *Spraying Sys. Co. v. Delavan*, 975 F.2d 387, 392 (7th Cir. 1992) (affirming that –JET suffix is descriptive, based on more than 50 USPTO records of such registrations), *quoting, Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.,* 781 F.2d 604, 610 (7th Cir. 1986) (Posner, J.); *see also*, *Top Tobacco*, 509 F.3d at 383 (finding TOP diluted in the tobacco industry, citing to USPTO records).

Facebook's entire Complaint is a fiction. Even if it had not made such a perfectly contrary argument only eight months ago regarding FACTBOOK, Facebook fully knows that it cannot claim exclusive use of the word BOOK on the internet. Facebook does not allege to have

11

ever used or applied to register the word "BOOK" as a trademark, even though it has achieved registration of the word FACE. (Rodenbaugh Decl., ¶9-10.) Indeed, the word BOOK has <u>never</u> been registered as a distinctive trademark in the United States, for <u>any</u> goods and services of <u>any</u> party, ever. (*Id.*, ¶12.) For this reason, the court in *Le Book* made clear that a trademark claim cannot be based on the generic term "book". *Le Book Pub., Inc.*, 418 F.Supp.2d at 311-312 (granting defendant's motion to dismiss based on the dissimilarity of the parties' LE BOOK and BLACK BOOK marks).

This is consistent with various dictionary definitions. (Rodenbaugh Decl., ¶13, Ex. H.) Also, even more so than in *Spraying Systems,* there are at least 100 other US trademark registrations (or allowed applications) for BOOK-formative marks for relevant goods and services. (*Id.*, Ex. C and D.) None of these marks were refused by the USPTO Examining Attorneys due to likelihood of confusion with Facebook, and none of these marks were challenged by Facebook. Many of them have disclaimed exclusive rights in BOOK, further indicating its descriptiveness. (*Id.*) Some 50 of those registrations preceded Facebook's launch in February, 2004. (*Id.*) Some 90 of those registrations preceded Teachbook's trademark application in March, 2009. (*Id.*) Some 70 such registrations claim first use prior to Facebook. (*Id.*) Therefore, Facebook clearly cannot claim that the BOOK suffix is distinctive to it for any relevant services.

Also, Facebook itself has added to the genericness of the term 'book' in relation to its services, through its own business activities. (*Id.*, Ex. I). Facebook uses and allows others to use BOOK-formative marks in close proximity to the Facebook mark, for highly similar services, with Facebook's knowledge, and without any actual confusion or the likelihood thereof.

12

These facts underscore the need for Facebook to allege something much more than the word "BOOK" in order to sufficiently state any claim against Teachbook. *See, e.g., Top Tobacco*, 509 F.3d at 383 ("the word 'top' is too common, and too widely used . . . to be appropriated by a single firm"); *Henri's Food Prods. Co., Inc.,* 717 F.2d at 356; *Le Book Pub., Inc.*, 418 F.Supp.2d at 311-312 (finding "book" generic).

### E. Facebook Does Not and Cannot Allege Actual Confusion.

Facebook does not allege anywhere in its Complaint that any of its "enormous and loyal user base" have ever been confused by the existence of Teachbook. Given that Teachbook is aimed only at teachers and administrators, who presumably can read English, there can be no likelihood that they would be confused into believing that Teachbook is affiliated with Facebook. The parties have co-existed for some two years, and the teachbook.com domain was first registered and used in 2007 (Complaint, ¶13, Ex. C, E). Facebook says it has 500 million users (Rodenbaugh Decl., Ex. A). So, Facebook ought to have evidence of actual confusion by now, if ever there could be any likelihood of confusion. *See, e.g.*, *Top Tobacco*, 2007 WL 118527 at *6, aff'd, 509 F.3d 380 ("if confusion were likely, one would expect ... [plaintiffs] to have been able to find one such confused person."); *quoting*, *Libman Co. v. Vining Industries, Inc.,* 69 F.3d 1360, 1363 (7th Cir. 1995) (Posner, J.) (discussing importance of evidence of actual confusion).

Yet, Facebook has alleged none. To the contrary, Facebook users already have demonstrated that they understand the difference between Facebook and Teachbook. Almost immediately upon the filing of its first lawsuit against Teachbook, Facebook users set up their own Facebook pages, attracting hundreds of users to denounce the fact that Facebook had filed suit against the tiny start-up Teachbook. One such page, called "Hey Facebook, Leave Teachbook Alone" has more than 130 members. (Rodenbaugh Dec., ¶15, Ex. J.)

13

At a minimum, Seventh Circuit authority makes clear that Facebook's inability to allege actual confusion requires that each of its claims for damages be dismissed. "A plaintiff wishing to recover damages for a violation of the Lanham Act must prove … that the violation caused actual confusion among consumers of the plaintiff's product." *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204-1205 (7th Cir. 1990); *Schutt Mfg. Co. v. Riddell Inc.,* 673 F.2d 202, 206-07 (7th Cir. 1982). <u>Therefore, at minimum, Facebook's claim for monetary damages must be dismissed.</u>

### F. Facebook Has Not Made And Cannot Make Any Factual Allegations Regarding Intent To Deceive.

To properly state such an allegation, Facebook would need to allege that Teachbook intended to "palm off" Teachbook's service as somehow related to Facebook. *E.g.*, *Packman,* 267 F.3d at 644. Facebook makes no such allegations, and cannot do so. To the contrary, there is ample, indisputable evidence that Teachbook did <u>not</u> intend to trade off the Facebook mark.

First, the stark and total dissimilarity in the presentation of the marks supports this conclusion. *E.g., Packman,* 267 F.3d at 644-45. Plus there was and is voluminous public record evidence of the many other BOOK-formative marks approved for related services at the time the teachbook.com domain was first selected and used in 2007 and/or at the time Teachbook selected its mark in early 2009. (Rodenbaugh Decl., Ex. C-D.) All of this evidence overwhelms Facebook's unsupported, arrogant allegation that Teachbook intended to trade off the alleged fame of the Facebook mark.

Moreover, the allegations of the Complaint prove the lack of intent to palm off, since Teachbook publicly and affirmatively distinguished its services from those of Facebook and MySpace. Complaint ¶13, Exhibit C. *Distinguishing* another product or service is the *opposite* of intending to palm off. *E.g, Architectural Mailboxes, LLC*, 2011 WL 1630809 at *3 ("Defendant is drawing a clear distinction between its products and those of Plaintiff. In light of this evidence,

14

Plaintiff has not alleged facts sufficient to support its trademark infringement claim."); *Thomas & Betts*, 65 F.3d at 663 (finding defendant's marketing "does not suggest an attempt to pass off, but rather to distinguish"). Here, Teachbook and Facebook have strikingly different marks aimed to offer different services at entirely different audiences. Moreover, the only *fact* alleged evidences an intent to distinguish, *not* to deceive.

**II.     FACEBOOK HAS NO CLAIM UNDER STATE OR COMMON LAW.**

The analysis of Facebook's state and common law claims will track that of the Lanham Act claims. *Top Tobacco*, 2007 WL 118527 at *2, aff'd, 509 F.3d 380 (7th Cir. 2007); *citing, e.g., Rust Env't & Infrastructure, Inc. v. Teunnissen,* 131 F.3d 1210, 1219 (7th Cir. 1997) (plaintiff could not prevail on state unfair competition claim if no likelihood of confusion); *Le Book Pub., Inc.*, 418 F.Supp.2d at 312 ("The test used for false designation of origin utilizes the same principles and standards as are used for trademark infringement").

**III.    FACEBOOK HAS FAILED TO STATE A CLAIM FOR CYBERSQUATTING.**

The cybersquatting claim fails for the same reasons the other claims fail, the parties marks are simply too dissimilar. *See, e.g., World Impressions, Inc. v. McDonald's Corp.*, 235 F.Supp.2d 831, 842 (N.D.Ill., 2002) ("In order to prove a cybersquatting claim, a plaintiff must show that its mark was distinctive at the time the defendant registered an identical or confusingly similar domain name."). Thus, this claim fails with all the rest, and the Complaint must be entirely dismissed

Dated:    June 15, 2011                          Respectfully submitted,

                                                 TEACHBOOK.COM, LLC

                                         By: /s/ *Mike Rodenbaugh*
                                                 One of Its Attorneys

15

Michael L. Rodenbaugh
(*pro hac vice* - California Bar No. 179059)
RODENBAUGH LAW
548 Market Street, Box #55819
San Francisco, CA 94104
Tel/fax: (415) 738-8087

Anthony L. Abboud
(ARDC # 6224356)
ABBOUD LEGAL, LLC
1363 Shermer Road, Suite 219
Northbrook, Il 60062
(tel) (847) 239-7165
(fax) (847) 239-7202

## **CERTIFICATE OF SERVICE**

    I, Michael L. Rodenbaugh, an attorney, hereby certify that I served true and correct copies of the **MEMORANDUM of LAW,** in connection with Defendants' Motion for Dismissal upon opposing counsel by electronically filing same with the Pacer/ECF system on this 15th day of June 2011.

                                               /s/ *Michael L. Rodenbaugh*
                                                 Michael L. Rodenbaugh