UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FACEBOOK, INC.,<br><br>　　Plaintiff,<br><br>　　v.<br><br>TEACHBOOK.COM LLC,<br><br>　　Defendant. | Civil Action No. 11-cv-03052<br><br>The Honorable Judge Marvin Aspen |

**PLAINTIFF FACEBOOK, INC.'S OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS FACEBOOK'S COMPLAINT**

**I.　INTRODUCTION**

Facebook alleges in its complaint that Defendant Teachbook's use of the mark TEACHBOOK, in connection with a competing social networking service, infringes and dilutes Facebook's famous mark. Rather than raise any failure in pleading, Teachbook's motion asks this Court to ignore factual issues that require discovery, examine material outside the pleadings (and of dubious evidentiary value), and make factual determinations that directly contradict Facebook's complaint, all in an attempt to show that Facebook cannot prove these claims. But a Rule 12(b)(6) motion does not test the sufficiency of proof, only the sufficiency of the pleading. This Court should not consider any of the materials attached to Teachbook's motion.

Nor should this Court convert Teachbook's motion into one for summary judgment. The question of likelihood of confusion is a factual determination, based on an examination of seven factors, and is rarely appropriate for summary judgment. Nearly all of the material Teachbook has submitted is used to refute a strawman argument: namely, that FACEBOOK owns blanket trademark rights in the word "book" when used in connection with printed publications.

Facebook has made no such claim. Rather, Facebook has accused Teachbook of infringing the FACEBOOK mark by using TEACHBOOK with a competing social networking service.

Finally, Teachbook's request that Facebook's dilution claim be dismissed should be denied because Teachbook's motion contains no argument or analysis explaining why Facebook's claims fail under the dilution statute. Facebook's Complaint adequately alleges trademark dilution. Teachbook's motion should be denied.

## II.  BACKGROUND

### A.  Facebook's Complaint

The following facts as alleged in the Complaint must be taken as true for purposes of deciding Teachbook's motion to dismiss. *See General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Plaintiff Facebook, Inc. ("Facebook") operates a social networking website under the widely recognized FACEBOOK name and mark. Complaint ¶¶6-11; 36-37. Since its launch in February of 2004, Facebook has grown to become one of the most well-known brands in the world, and consumers have become accustomed to seeing the FACEBOOK brand in connection with a wide variety of services across the web and elsewhere, not just on the Facebook site. Complaint ¶¶7-11, Exs. A, B.

Facebook owns 12 U.S. trademark registrations and 21 applications for FACEBOOK and related marks for use in connection with social networking and other goods and services. Complaint ¶¶8-9, Exs. A, B. Facebook also owns common law rights in the FACEBOOK mark by virtue of its continuous use of FACEBOOK since February of 2004. Complaint ¶9.

The FACEBOOK trademark is highly distinctive with regard to online social networking services. Complaint ¶¶6-11. Facebook enjoys widespread visibility, extensive and continuous media coverage, a high degree of consumer recognition, and an enormous and loyal user base.

Complaint ¶10. Facebook has also engaged in substantially exclusive use of the Facebook marks in connection with social and professional networking services. Complaint ¶38(c). The Facebook marks are famous. Complaint ¶¶10, 19, 37.

Defendant Teachbook.com, LLC ("Teachbook") uses the mark TEACHBOOK in connection with an online website that offers social networking services for teachers. Complaint ¶12. Founded long after the FACEBOOK mark became famous, Teachbook has touted itself as an alternative to Facebook:

> Many schools forbid their teachers to maintain Facebook and MySpace accounts because of the danger that students might learn personal information about their teachers. With Teachbook, you can manage your profile so that only other teachers and/or school administrators can see your personal information, blogs, posts, and so on. Teachbook is all about community, utility, and communications for teachers.

Complaint ¶13 & Ex. C. As alleged in the Complaint, the services offered under the TEACHBOOK mark are the same and/or related to the services provided by Facebook, and Teachbook adopted its mark with the intention of causing confusion with and trading on the goodwill of the FACEBOOK mark. Complaint ¶¶15-18.

### B. Procedural History

Facebook originally filed this case in the United States District Court for the Northern District of California on August 18, 2010. Complaint ¶20. On May 3, 2011, Judge Ronald Whyte dismissed Plaintiff Facebook's case for lack of personal jurisdiction. Complaint ¶22. In doing so, Judge Whyte nonetheless stated that Facebook "has made a prima facie case showing that Teachbook committed an intentional act by selecting a confusingly similar trademark, and that the act caused harm that Teachbook knew was likely to be suffered in the Northern District of California." *Id.* Facebook subsequently filed this action.

III.   ARGUMENT

    A.   **Legal Standard**

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering the motion, the Court must accept all well-pleaded allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *General Elec. Capital Corp.*, 128 F.3d at 1080.

The Seventh Circuit has made clear that a complaint need not lay out facts corresponding to every element of a legal theory. *Simpson v. Nickel*, 450 F.3d 303, 305 (7th Cir. 2006) ("[T]he belief that complaints must lay out facts corresponding to every "element" of a legal theory...is a code-pleading approach, which the Federal Rules of Civil Procedure reject.")  A complaint only needs to specify the "bare minimum facts necessary" to put the defendant on notice of the claims so that he can file an answer. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  Thus, the question before the Court here is whether the allegations of Facebook's complaint, construed in a light most favorable to Facebook, give Teachbook sufficient notice of the claims against it to allow Teachbook to answer.  Facebook's Complaint does so.

    B.   **Teachbook's Motion Should be Denied as Improper**

Teachbook's motion to dismiss should be denied as an improper early motion for summary judgment because it relies on hundreds of pages of material outside the pleadings.  In deciding a motion under Rule 12(b)(6), "a court simply examines the allegations in the complaint to determine whether they pass muster." *General Elec. Capital*, 128 F.3d at 1080.  If the Court considers matters outside the pleadings, the Court must convert the motion to one for summary judgment and "all parties shall be given reasonable opportunity to present all material made

pertinent to such a motion by Rule 56." *Id*. Indeed, it is reversible error for a Court to consider matters of disputed fact outside the pleadings without first converting the motion. *Id.*

Teachbook's motion includes a 349-page attorney declaration of premature challenges to Facebook's factual allegations. Specifically, Teachbook relies on the following:

(1) Printouts from Facebook's website (Rodenbaugh Exs. A, I);

(2) A purported (but unauthenticated) Facebook filing from a European trademark proceeding (Rodenbaugh Decl. Ex. B);

(3) Trademark registration certificates and printouts from the USPTO database (Rodenbaugh Exs. C-G);

(4) Printouts of alleged dictionary definitions of the words "book" and "facebook" (Rodenbaugh Decl. Ex. H); and

(5) A printout of a Facebook group that Teachbook contends is critical of Facebook's litigation against Teachbook (Rodenbaugh Decl. Ex. J).

None of this alleged evidence can be considered in the context of a Rule 12(b)(6) motion without converting the motion to a Rule 56 motion for summary judgment.

Teachbook argues that the Court may consider these documents because they are either referenced in the complaint, or subject to judicial notice as a matter of public record. Motion at 5-6. Teachbook is wrong. The rule allowing a Court to consider matters of public record is "a narrow exception" to the rule that Courts are limited to the pleadings in ruling on a Rule 12(b)(6) motion. *General Elec. Capital*, 128 F.3d at 1080. This exception is rooted in Federal Rule of Evidence 201(b), which allows the Court to take judicial notice of public records *only* if the facts in those records are "not subject to reasonable dispute[]". Indeed, in *General Electric*, one of Teachbook's cited cases, the Seventh Circuit held that it was an abuse of discretion for the trial

Court to take notice of a ruling by the same judge in an earlier proceeding involving the same plaintiff, because the *evidentiary value* of that ruling was subject to a reasonable dispute. *Id.* at 1082. Like the public record at issue in *General Electric*, the evidentiary value of Teachbook's proffered documents are subject to reasonable dispute.

To begin, Teachbook offers the printouts of USPTO records for the purpose of arguing that consumers are unlikely to be confused by the TEACHBOOK mark because there are other marks that use BOOK, many in connection with actual physical paper books. Motion at 12. However, even the existence of other similar marks in the field is related to a factual issue – the strength of the FACEBOOK mark – and is but one of seven factual issues the Court must weigh in determining likelihood of confusion. *AutoZone, Inc. v. Strick* 543 F.3d 923, 929 (7th Cir. 2008) (internal citation omitted). Facebook has alleged in its Complaint that it has a famous and highly distinctive mark (Complaint ¶¶6-11; 36-38). A motion to dismiss is not the appropriate vehicle for Teachbook to submit evidence that it believes contradicts this allegation.

Likewise, the evidentiary value of Exhibit B, the submission in support of Facebook's European trademark application, is subject to dispute and therefore should not be considered. Facebook's alleged statements to the European tribunal are not "judicial admissions" because they were not statements made in the present litigation, and therefore are not binding in this litigation. *Grant Imp. & Distrib. Co., Inc. v. Amtec Int'l of N.Y. Corp.*, No. 09 C 6118, 2010 WL 706042 at *3, (N.D. Ill. Feb. 24, 2010) ("[A] judicial admission from a pleading filed in one lawsuit does not constitute a judicial admission in a separate action, and is therefore not binding or conclusive with respect to the separate action.") (internal quotations omitted).

More importantly, Exhibit B is entirely unrelated to Facebook's claims against Teachbook. The document, irrelevant here, consists of attorney argument that the *Spanish*

*speaking population of Spain* would be unlikely to confuse the FACEBOOK mark with the mark FACTBOOK, *under European law*, because FACTBOOK is used *only in connection with physically bound books*. *See, e.g., Carillion Imps Ltd. v. Frank Pesce Group, Inc.*, 913 F.Supp. 1559, 1568 (S.D. Fla. 1996) (finding foreign law irrelevant and inadmissible in disputes over rights to marks in the United States). Facebook has not accused Teachbook of violating European law by offering paper volumes called a "Teachbook." Rather, Facebook has accused Teachbook of violating U.S. law by offering a competing social network under a confusingly similar trademark. As in *General Electric,* the evidentiary value of Exhibit B is disputed, thus it would be an abuse of discretion for the Court to consider the document in a motion to dismiss.

Teachbook's printouts from the Facebook website, Exhibits A and I, are similarly inadmissible for purposes of ruling on Teachbook's motion to dismiss. Teachbook is correct that a Court ruling on a motion to dismiss may consider documents referenced in a pleading, such as a contract in a breach of contract case, if those documents are "central" to the plaintiff's claims. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F. 2d 429, 431 (7th Cir. 1993). However, Teachbook has made no showing here that the printouts of the Facebook site are central to Facebook's claims. These documents should therefore also be excluded by the Court.

The evidentiary value of the dictionary definitions is also subject to dispute.[1] Most of the definitions offered by Teachbook are for the term "book," which are irrelevant to the present litigation because Facebook is not claiming rights in BOOK in connection with printed publications. And Teachbook's reliance on the alleged definitions of "facebook" is puzzling, as

---

[1] Moreover, the case Teachbook cites in support of its request that the Court consider dictionary definitions was not a Rule 12(b)(6) case but a preliminary injunction case. *Miller Brewing Co. v. Heileman Brewing Co., Inc.*, 561 F.2d 75, 80 (7th Cir. 1977). A court considering a motion for preliminary injunction is not limited to consideration of the pleadings.

many of the attached definitions associate the term with the plaintiff in this lawsuit. *See, e.g,* Ex. H at 323 ("- *n.* 1. a popular social networking website").

Finally, while the Court may consider admissible evidence if the Court converts the motion to one for summary judgment, the Court should not do so here. Such a motion would be both premature and fail to comply with the Local Rules applicable to motions for summary judgment. L.R. 56.1. More importantly, the factual issues Teachbook argues (such as the similarity of the marks, Teachbook's intent, and the strength of Facebook's mark) will be the subject of extensive discovery which will inform the Court's ultimate decision. The Seventh Circuit has held that whether a consumer is likely to be confused by the origin of a defendant's products or services is a question of fact that may be resolved on summary judgment only "if the evidence is so one-sided that there can be no doubt about how the question should be answered." *AutoZone, Inc.*, 543 F.3d at 929. Under Rule 56(d), Facebook should be allowed to fully develop the factual record before being required to oppose a motion for summary judgment.

        **C.**     **Facebook's Complaint Sufficiently Alleges Likelihood of Confusion**

Teachbook's burden at the 12(b)(6) stage is a tall one: it must show that Facebook has not alleged the "bare minimum facts necessary to put the defendant on notice of the claim so that [it] can file an answer." *Papa John's Int'l, Inc. v. Rezko*, 446 F.Supp.2d 801, 807 (N.D. Ill. 2006). To plead likelihood of confusion, Facebook must allege that (1) its marks are protectable and (2) Teachbook's use of the mark is likely to cause confusion among consumers. *Id.*

Facebook's complaint more than satisfies the first element by alleging ownership of 12 federal registrations and 21 pending trademark applications for FACEBOOK. Complaint ¶¶8-9, Exs. A, B. Facebook's Complaint further alleges ownership of common law rights in the

FACEBOOK mark by virtue of continuous use in connection with social networking and other services starting at least as early as February of 2004. Complaint ¶10.

Facebook states a claim for likelihood of confusion by alleging that (1) The FACEBOOK mark and the Teachbook mark are similar in overall commercial impression; (2) the products offered under both marks are similar; (3) the products are offered under both marks to the same consumers, in the same geographic region; (4) that Facebook has a strong and famous mark; and (5) that Teachbook intended to pass off its product as being that of Facebook when it selected the TEACHBOOK mark. Complaint ¶¶6-19; 25-28. These allegations constitute five of the seven non-exclusive factors that courts in the Seventh Circuit consider when determining whether a likelihood of confusion exists. Taken as true, as the Court must do in the context of a Rule 12(b)(6) motion, these allegations are more than sufficient to establish a likelihood of confusion. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 898 (7th Cir. 2001) (existence of four likelihood of confusion factors sufficient to warrant preliminary injunction).

The crux of Teachbook's motion is not that Facebook has failed to *allege* likelihood of confusion, but rather that Facebook *cannot prove* it. More specifically, Teachbook argues that Facebook cannot prove three of the seven factors: similarity of the marks, Teachbook's intent, and actual confusion. Of course, Facebook need not prove these factors at this stage in the case. *Triple Canopy v. Moore*, No. 04 C 3265, 2005 WL 1629768 at *11 (N.D. Ill. Jul. 1, 2005) ("Since the ultimate test of Triple Canopy's claim is whether there is likelihood of confusion by the consuming public, a question of fact which cannot be decided on a motion to dismiss, the Court declines any invitation to dismiss the claim on such basis at this time.").

1.  **Facebook's Complaint Adequately Alleges Similarity**

The first page of Teachbook's motion invites this Court to do exactly what the Seventh Circuit prohibited in *AutoZone*: conduct a side-by-side comparison of FACEBOOK and TEACHBOOK, ignoring the context in which the two marks are presented to consumers, and divorcing the term BOOK from the analysis. The Court should decline this invitation.

Teachbook argues that FACEBOOK cannot claim rights in the term "book" and that, as a matter of law, two marks that share a "non-distinctive" suffix cannot create a likelihood of confusion. Motion at 7-9. Teachbook is wrong. Competing marks that share a common suffix can, when examined as a whole, create a likelihood of confusion. *See AutoZone, Inc.*, 543 F.3d at 929. In *AutoZone*, the Seventh Circuit reversed a district court's holding that the marks AUTOZONE and OIL ZONE / WASH ZONE were insufficiently similar to create a triable issue of fact. *Id*. The panel rejected the same argument Teachbook makes here – namely, that the Court should ignore the allegedly non-distinctive common suffix of the two marks, and focus only on the non-common elements of the two marks. *Id*. This argument, the panel noted, violates the anti-dissection rule that requires marks to be viewed in their entirety. *Id*. at 930 (citing *AutoZone, Inc. v. Tandy Corp*, 373 F.3d 786 (6th Cir. 2004); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:41, at 23-123 (2003)).

The Seventh Circuit also held that it was improper to determine likelihood of confusion by simply making the side-by-side comparison advocated by Teachbook: "[w]e must compare the marks 'in light of what happens in the marketplace and not merely by looking at the two marks side-by-side.'" *Id* at 930 (citing *Sullivan v. CBS Corp.*, 385 F.3d 772, 777 (7th Cir. 2004). The panel went on to note "'the test is not whether the public would confuse the *marks*, but whether the viewer of an accused mark would be likely to associate the product or service with

which it is connected with the source or services with which an earlier mark is connected.'" *Id*. at 930 (citing *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir. 1976)). After considering the marks as a whole and in the context of the relevant consumer markets, "the prominent similarities between the marks may very well lead a consumer cruising down the street to believe, after driving past both parties' business, that Oil Zone and Wash Zone represented AutoZone's entry into the oil-change and car wash-services market." *Id*. at 930. Facebook has alleged that Teachbook and Facebook offer related services through the same channels of trade (Complaint ¶¶26-27); just as a consumer might believe Oil Zone to be associated with AutoZone, internet users may believe Teachbook is associated with Facebook.

### 2. Whether "Book" is Generic for Printed Publications is Irrelevant

Teachbook next asserts that "book" is a generic term and cannot be registered as a trademark. Motion at 9. This argument is inapposite because Facebook has not alleged rights in the standalone mark BOOK, but in the mark FACEBOOK as a whole. The argument also demonstrates a common misunderstanding of the law of genericness.

In trademark law, a generic term designates the product itself rather than identifying the source of the product. *Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494 (7th Cir. 2001). Generic terms are unprotectable as trademarks only when they are used with the products for which they are generic. A term may be generic for one category of goods, but protectable as a trademark when used in connection with another category. *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir. 1976) ("A term may thus be generic in one market and descriptive or suggestive or fanciful in another."). For example, "apple" is generic when used in connection with apples but a trademark when used in connection with computers.

The *Le Book* case, cited by Teachbook, is consistent with this analysis. In *Le Book*, a court in New York held that the term "book" was an unprotectable component of a mark *when used in connection with printed publications*. *Le Book Pub., Inc. v. Black Book Photography, Inc.*, 418 F.Supp.2d 305, 311 (S.D.N.Y. 2005) ("*Le Book NY* is a square shape with big spiral binding and a clear acrylic plastic cover. The *Blackbook Directory* is a traditionally bound book, rectangular in shape"). While "book" may be generic for printed publications, it is not generic when it is used in connection with social networking services.

Finally, the *Top Tobacco* case, a summary judgment case cited by Teachbook, is inapplicable here. *Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*, 509 F.3d 380 (7th Cir. 2007). In *Top Tobacco* the court held that there could be no likelihood of confusion or dilution of the mark TOP TOBACCO by other uses of TOP because the plaintiff had represented to the USPTO that it only claimed limited protection of the TOP portion of its mark. *Id.* at 383. Facebook made no such representation to the PTO in connection with the FACEBOOK mark, nor would Facebook need to do so. Indeed, Facebook's Complaint alleges that the BOOK portion of the mark is distinctive when used with social networking services. Complaint ¶38(a).

### 3. Facebook Has Adequately Alleged that Teachbook Intended to Cause Confusion, and Need Not Allege Actual Confusion

Teachbook's claim that there is "ample, indisputable evidence that Teachbook did <u>not</u> intend to trade off the Facebook mark" again asks this Court to improperly weigh evidence and determine factual issues, and is also wrong. Motion at 14. As alleged in the Complaint, Teachbook's adoption of the suffix "book" has not occurred in a vacuum. The FACEBOOK marks have received extensive media coverage, and enjoy widespread recognition in connection with online social networking services. Complaint ¶¶7, 10. Teachbook began offering online

social networking services in 2009, after Facebook's marks became famous. Complaint ¶¶12, 14). Teachbook even admits that its services are a substitute for Facebook. Complaint ¶13.

Indeed, as discussed above, Judge Whyte of the Northern District of California has already observed that Facebook's complaint establishes a *prima facie* case of likelihood of confusion. Complaint ¶22. Judge Whyte also expressed skepticism for the lack of intent argument Teachbook makes in its motion, writing, "Teachbook, *somewhat implausibly*, insists that it did not intend to trade on Facebook's mark, and that it selected the Teachbook mark in 2009 because of the connection between teachers and books." *Id*. (emphasis added).

Teachbook also attempts to support its motion by arguing that because Facebook has not specifically alleged an actual instance of consumer confusion at the initial pleadings stage of the case, it should not be allowed to pursue its trademark claims. This argument fails. First, courts in the Seventh Circuit have made clear that a showing of actual confusion is not required to prevail on a trademark infringement claim. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 686 (7th Cir. 2001) ("As we have stated many times, however, the plaintiff need not show actual confusion in order to establish likelihood of confusion.") Second, Teachbook's motion, if granted, would deny Facebook discovery from one of the most likely evidentiary sources of actual confusion -- communications between Teachbook and its existing and potential customers.

D. **Teachbook's Motion Ignores Facebook's Dilution Claim**

Teachbook's motion also seeks dismissal of Facebook's dilution claim, but fails to offer any dilution analysis. *See* Motion at 7 ("Since Facebook cannot even allege likelihood of confusion or dilution, Counts 1, 2 and 3 under the Lanham Act must be dismissed."). Teachbook's argument appears to be based on the false premise that Facebook must show a likelihood of confusion to establish dilution. Facebook does not. *Papa John's Int'l Inc.,*446

F.Supp.2d at 808 ("[D]ilution is distinct from plaintiff's other Lanham Act claims because it does not require that use of plaintiff's marks engender public confusion."). The statutory language of the Lanham Act expressly allows a plaintiff to allege dilution by blurring regardless of the existence of actual or likely confusion. 15 U.S.C. § 1125(c)(1). And a dilution plaintiff need not allege that the marks are identical or substantially similar. *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1172 (9th Cir. 2011).

To plead trademark dilution, Facebook must plead (1) its marks are famous; (2) defendants are making use of [their] marks in commerce; (3) defendants' use began after the marks became famous; and (4) defendants' use of the marks dilute the quality of the marks by diminishing the capacity of the marks to identify and distinguish goods and services." *Papa John's Int'l, Inc.*, 446 F.Supp.2d at 808. Facebook has done this. As alleged in the complaint, Facebook began using its marks in commerce in February 2004 (Complaint ¶6), it owns multiple U.S. registrations for social networking services (Complaint ¶7), and it has achieved a high degree of consumer recognition through its use of the Facebook mark and extensive and continuous media coverage of its marks (Complaint ¶10). Teachbook did not adopt its mark until 2009, after the Facebook marks were famous. Complaint ¶¶19, 37. In offering social networking services, Teachbook uses a distinctive part of the Facebook marks, i.e. "book" that impairs the distinctiveness of the FACEBOOK marks and weakens the connection in consumers' minds between the FACEBOOK marks and Facebook's services. Complaint ¶38(a). Facebook is engaging in substantially exclusive use of the FACEBOOK marks in connection with social and professional networking services (Complaint ¶38(c)) and Teachbook intended to create an association with the FACEBOOK marks. Complaint ¶38(e).

Teachbook has not even attempted to explain how these detailed factual allegations fail to put it on notice of Facebook's trademark dilution claim.

### E. Facebook's Complaint States Claims Under The Lanham Act For Cybersquatting, the Common Law, and Illinois Statutory Law

Finally, Teachbook's arguments against Facebook's cybersquatting, common law and Illinois statutory causes of action rely entirely on Teachbook's flawed arguments in support of its motion to dismiss Facebook's likelihood of confusion claim. For the reasons set forth above, none of these claims should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Teachbook's Motion to Dismiss should be denied.

Dated: July 13, 2011

/s/ Jeffrey T. Norberg

| | |
|---|---|
| Christopher J. Renk (IL Bar No. 6199012)<br>Michael J. Harris (IL Bar No. 6280168)<br>BANNER & WITCOFF, LTD.<br>10 S. Wacker Drive, Ste. 3000<br>Chicago, IL 60606<br>Tel: (312) 463-5000<br>Fax: (312) 463-5001<br>Email: crenk@bannerwitcoff.com<br>        mharris@bannerwitcoff.com | Michael G. Rhodes (admitted *pro hac vice*)<br>Anne H. Peck (admitted *pro hac vice*)<br>Jeffrey T. Norberg (admitted *pro hac vice*)<br>COOLEY LLP<br>101 California Street, 5th Floor<br>San Francisco, CA 94111-5800<br>Phone: (415) 693-2000<br>Fax: (415) 693-2222<br>Email: rhodesmg@cooley.com<br>        apeck@cooley.com<br>        jnorberg@cooley.com<br>Attorneys for Plaintiff, Facebook, Inc. |

### CERTIFICATE OF SERVICE

I, Jeffrey T. Norberg, an attorney, hereby certify that I served true and correct copies of Facebook's Opposition to Teachbook's Motion to Dismiss upon opposing counsel by electronically filing same with the Pacer/ECF system on this 13th day of July, 2011.

/s/ *Jeffrey T. Norberg*